UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES BYARS,

                Petitioner,                Case No. 2:15-cv-12268
                                                   Hon. Nancy G. Edmunds

v.

LORI GIDLEY,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case brought by a Michigan prisoner under 28 U.S.C. § 2254. James Byars, ("Petitioner"), was convicted after he pled no contest pursuant to a plea bargain in the Washtenaw Circuit Court to third-degree criminal sexual conduct. MICH. COMP. LAWS § 750.520d(1)(a). Petitioner was sentenced to 5 to 15 years' imprisonment under the terms of the agreement.[1] The Court interprets the petition to be raising seven claims: (1) Petitioner's plea was coerced by his trial attorneys, (2) the trial court violated the Michigan Court Rules in the manner it denied Petitioner's motion for relief from judgment, (3) the trial court failed to properly serve Petitioner with the orders denying his motion for relief from judgment, (4) Petitioner was denied the effective assistance of trial counsel, (5) Petitioner was denied the effective assistance of appellate counsel, (6) the plea process was insufficient to protect Petitioner's rights, and (7) the sentencing transcript contains

---

[1]Petitioner is also serving a 20 to 40 year sentence imposed on July 22, 2013, for his Alpena County jury trial conviction of one count of first-degree criminal sexual conduct. That conviction is not at issue in the present case.

errors. The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal in forma pauperis.

## I. Background

Petitioner was originally charged with one count of third-degree criminal sexual conduct involving a minor, and two counts of child sexually abusive activity. The allegations against Petitioner were contained in a police report later used to establish the factual basis for the no contest plea:

> PICTURES - The interviewer asked Brianna about the photographs. Brianna stated that James would text her or call her to send him nude photographs of herself via cell phone camera. Brianna stated that James asked her for the pics to be of her "boobs and vagina." Brianna stated that James would send pictures of his face, his penis, and his chest area to her phone.
>
> NORTHFIELD VENUE - During the forensic interview Brianna stated that on or about 8-22-2010, James kept calling her wanting to meet up. Brianna stated that she finally told him ok that he could come over and he came over to the area of the trailer park (Northfield Estates) and picked her up on his motorcycle. From there Brianna stated that James drove to the Whitmore Lake Athletic Filed, "Near Barker Road." Brianna explained that he pulled onto a secluded path. From there James pulled down her pants and underwear and was kissing her on the lips. Brianna explained to the interviewer that her position was that she was leaned over the bike from the side. Brianna stated that James inserted his penis into her butt. Brianna stated that he had a pocket knife he had, however never threatened her with it. Brianna stated that James stopped when they heard noises or possible people in the area. They left the scene at this time.

Dkt. 11, at 29.

At an August 4, 2011, pretrial hearing the parties agreed to a plea bargain whereby Petitioner would plead no contest to the criminal sexual conduct charge and receive a sentence of 5 to 15 years, and in exchange the prosecutor would dismiss the second two counts. Dkt. 10-5, at 3. The parties acknowledged that Petitioner was facing possible

charges in another county that were unaffected by the plea bargain. Id.

Petitioner was placed under oath and indicated his desire to plead no contest to the charge of third-degree criminal sexual conduct. Id., at 4. He was informed and acknowledged that the offense carried a sentence of up to 15 years. Id. Petitioner indicated his understanding that a plea of no contest would be treated in the same way as a plea of guilty. Id., at 4-5. The trial court advised Petitioner of all the trial rights he would be waiving by entering his plea, and Petitioner indicated his understanding and assent. Id., at 5.

Petitioner denied that there was any agreement other than what was placed on the record. Id., at 6. He denied that anyone had made him any other promises, or that anyone had made any threats or forced him to plead no contest. Id. Petitioner indicated it was his own choice to enter his plea. Id.

On the date scheduled for sentencing, Petitioner moved to withdraw his plea on the grounds that it was coerced by the conduct of his trial attorney. Dkt. 10-6, at 5. The trial court denied the motion, finding that Petitioner denied at the plea hearing that anyone had threatened or forced him to enter his plea. Id.

Petitioner addressed the court and indicated that he believed his trial attorney did not have his "best interests at heart." Id., at 10. He complained that counsel convinced him to waive the preliminary examination. Id. He explained that he gave a photograph of the minor victim to her father "[t]o get Brianna to stop touching me, which needed to be brought up in court as one of my defenses." Id.[2]

---

[2]Petitioner asserts this is an error in the transcript, and that he said he gave the photograph to the victim's father to stop the victim from *texting* him, rather than the incriminating sounding *touching* him.

Petitioner alleged that his attorney told him that he could "probably get . . . something like three and a half to seven years. I told him I wanted a jury." Id. Petitioner maintained his innocence, but his attorney nevertheless told him he "was in big trouble." Id., at 10-11. Petitioner indicated he was "an emotional wreck" because his mother passed away. Id., at 11. He stated he attempted to fire his attorney, but the court would not allow him to do so. Id. Petitioner stated a different public defender was appointed to represent him, and he was similarly dissatisfied with him when the new attorney incorrectly informed him that he had made incriminating statements during recorded phone calls from the jail. Id., at 12.

Petitioner alleged that his new attorney told him he had a one-time offer for 5 to 15 years, but Petitioner told him he wanted to take the case to trial. Id., at 13. Petitioner offered an explanation why it seemed he told his mother during a phone call that he had sex with the victim. Id. His attorney told him the recorded call "didn't look good, it was highly probable I would lose." Id., at 14. Petitioner explained that he took the deal because "I was still grieving my mother's death. . . I was confused, I had no time to think it over, all in seconds." Id., at 14. Petitioner indicated that the day after the plea he started to see what he could do to withdraw it. Id., at 14-15.

The trial court noted that Petitioner's allegations were contradicted by his testimony at the plea hearing:

> Well, it's really interesting, the majority of what you told me would, basically suggest that you came kicking and screaming to the, to the courtroom and with your arm twisted behind your back to, to plead no contest. When I took your plea, you did not do that. You did not appear to be undecided about what you wanted to do. I asked you, did anybody promise you anything, did anybody threaten you or force you to plead guilty or no contest, was it your own choice to do so. You answered all those questions in the affirmative and

> it sounds like you just decided you want to change your mind at this point, so I heard what you said but it doesn't change anything as far as I'm concerned.

Id., at 16. The Court went on to sentence Petitioner to the agreed-upon sentence of 5 to 15 years' imprisonment. Id.

Following his conviction and sentence, Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, which raised the following claim:

> I. Whether the trial court abused its discretion when it denied the motion to withdraw the plea when the Defendant proved that he was coerced into taking the plea agreement and maintained his innocence?

The Michigan Court of Appeals denied the application for leave "for lack of merit in the grounds presented." *People v. Byars*, No. 308865 (Mich. Ct. App. April 6, 2012). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, which was denied by standard order. *People v. Byars*, 820 N.W.2d 897 (Mich. 2012) (table). The United States Supreme Court subsequently denied Petitioner's petition for a writ of certiorari. *Byars v. Michigan*, 133 S. Ct. 1500 (2013).

Petitioner returned to the trial court and filed a motion for relief from judgment, raising the following claims:

> I. The actions, inactions, errors, omissions and lack of strategy by the Defendant's trial attorneys amounts to absence of counsel or ineffective assistance of counsel.
>
> II. The failure of the state of Michigan to adequately fund indigent defense in the state deprived the Defendant of the Sixth Amendment guarantee of the effective assistance of counsel.
>
> III. The omissions and lack of strategy by appellate counsel on behalf of the Defendant amount to ineffective assistance of counsel.
>
> IV. The entire plea process was insufficient to protect the guaranteed constitutional rights of petitioner.

5

> V. The integrity of the sentencing transcript was compromised where inaccuracies led to conclusions of guilt on appellate review.
>
> VI. The failings of trial and appellate counsel, along with the Defendant's actual innocence and indigence, demonstrate "good cause" and prejudice, satisfying the analysis of MCR 6.500 et seq.
>
> VII. The effect of the cumulative errors denied the Defendant his rights to due process and equal treatment under the 14th Amendment of the U.S. Constitution.

The trial court denied the motion for relief from judgment by order dated August 1, 2013. Dkt. 10-12. Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, but it was denied "for failure to establish entitlement to relief under Michigan Court Rule 6.508(D)(3)(a) & (b)." *People v. Byars*, No. 320598 (Mich. Ct. App. June 30, 2014). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court, but it was also denied under Rule 6.508(D). *People v. Byars*, 861 N.W.2d 3 (Mich. 2015) (table).

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is bared under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540

U.S. 12, 15-16 (2003) (per curiam), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004); see also *Woods v. Etherton,* No. 15-723, 2016 WL 1278478, at *3 (U.S. Apr. 4, 2016) (habeas relief precluded if state court decision is "not beyond the realm of possibility [from what] a fairminded jurist could conclude.")

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

### III. Analysis

A. Procedural Default

Respondent contends that several of Petitioner's claims are procedurally defaulted because the errors were not preserved on direct appeal. Under the procedural default

7

doctrine, a federal habeas court will not review a question of federal law if a state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. See *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, procedural default is not a jurisdictional bar to review of a habeas petition on the merits. See *Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). It may be more economical for the habeas court to simply review the merits of the petitioner's claims, "for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In the present case, the Court deems it more efficient to proceed directly to the merits, especially because Petitioner alleges that his attorneys were ineffective for failing to preserve the defaulted claims.

B. Validity of Guilty Plea

Petitioner has filed over one-hundred pages of arguments and exhibits. Nevertheless, because this case arises from a no contest plea, the issue is relatively straight-forward. Factual allegations contradicted by a proper plea colloquy simply do not merit relief. And at root, that is what the case is about. The state trial court conducted a proper plea colloquy, and now Petitioner seeks to undermine it by making allegations of coercion contradicted by his sworn testimony at the plea hearing that he was entering the plea of his own free will.

The Court interprets Petitioner's first, fourth, and sixth claims to assert that he was coerced by his trial attorneys into accepting the plea bargain, and that they were ineffective

for failing to contest the charges against him. The plea colloquy belies these claims.

When a criminal defendant is convicted pursuant to a plea, habeas review is limited to whether the plea was made knowingly, intelligently, and voluntarily. *United States v. Broce*, 488 U.S. 563 (1989); *Boykin v. Alabama*, 395 U.S. 238 (1969). A plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id*. at 756. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id*. at 748. A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. *Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id*. at 749.

In this case, the state court record reveals that Petitioner's plea was knowing, intelligent, and voluntary. Petitioner is no stranger to the criminal justice system. Respondent indicates without opposition that Petitioner has five prior felony convictions, all of which resulted from guilty pleas. There is no evidence that he suffered from any physical or mental problems which would have impaired his ability to understand the criminal proceedings or the nature of his plea.

Petitioner alleges that he did not disclose the coercion he felt at the plea hearing because his mother had recently died: "The reason Mr. Byars did not disclose to the trial court that he felt pressured by his attorneys to plea was, in fact, Mr. Byars was grievous over his mother's death and could not think properly about what was going on around him when his counsel made a prearranged unscheduled court hearing, just to get Mr. Byars to

9

plead to something he had nothing to do with." Dkt. 11, at 5.

This allegation is insufficient to show that his plea was involuntary because it is contradicted by his on-the-record sworn testimony at the plea hearing. As aptly stated by the United States Court of Appeals for the Sixth Circuit when faced with a challenge to a plea bargain based upon an alleged off-the-record agreement:

> If we were to rely on [the petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless. . . . "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."

*Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). The plea colloquy shows that Petitioner indicated that he was pleading guilty of his own free will. He is bound by that testimony.

Petitioner also fails to show that trial counsel was ineffective in advising him to accept the plea bargain rather than stand trial. The Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who is challenging a plea on the ground that he or she was denied the Sixth Amendment right to the effective assistance of counsel. First, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). To demonstrate that counsel's performance fell below this standard, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Second, if the petitioner satisfies the first prong of this test, the petitioner must then demonstrate that counsel's performance resulted in prejudice, i.e., "that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Additionally, the Supreme Court has emphasized the extraordinary deference to be afforded trial counsel in the area of plea bargaining. See *Premo v. Moore*, 562 U.S. 115, 125 (2011) (stating that "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage"); see also *Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011) (citing *Premo*).

Petitioner asserts that his trial attorneys were too focused on obtaining a plea bargain and never attempted to contest the charges despite Petitioner's statements that he wanted to stand trial. He notes that in his Genesee County case his attorney demanded a preliminary examination, and ultimately charges there were dismissed.

It is true that defense counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary. See *Strickland*, 466 U.S. at 690-91; *Lundgren v. Mitchell*, 440 F.3d 754, 771 (6th Cir. 2006). Petitioner, however, has not established that counsel failed

11

to investigate his case or was deficient for advising him to accept a plea. The public defender's office assigned a second attorney to represent Petitioner after Petitioner complained about the first one. It is clear based on Petitioner's allegations that his attorneys were concerned about statements Petitioner made from jail that were recorded and felt that he would likely be convicted if he stood trial.

Counsel's strategy of pursuing a plea deal and foregoing other avenues of defense was reasonable given the charges against Petitioner, the possibility of Petitioner having made incriminating statements, the benefit obtained by the plea bargain, and the fact that Petitioner has not proffered the Court with any theory of defense other than that the victim was not telling the truth. It is well-settled that conclusory allegations are insufficient to warrant habeas relief. See, e.g., *Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); see also *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for evidentiary hearing on habeas review).

Petitioner fails to establish that trial counsel was ineffective. The Court is satisfied that Petitioner's plea was knowing, intelligent, and voluntary, and that the state courts did not unreasonably apply Supreme Court law in rejecting these claims. Habeas relief is not warranted.

C. Remaining Claims

Petitioner's second and third claims assert that the trial court did not make concise findings of fact when it denied his motion for relief from judgment, as required by state law. He also asserts that the court allowed the prosecutor to respond to his post-judgment

motion and prepare an order without being asked to do so.

With respect to these arguments, because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition. *Williams-Bey v. Trickey*, 894 F. 2d 314, 317 (8th Cir. 1990); *Kirby v. Dutton*, 794 F. 2d 245, 247-248 (6th Cir. 1986). Even if the state court's failed to follow its own court rules during state post-conviction review, Petitioner's federal constitutional rights were not implicated because he had no constitutional right to state post-conviction review.

Petitioner's seventh claim asserts that there are errors in the portion of the sentencing transcript in which he asked the trial court to withdraw his plea. Specifically, he claims that he did not admit his guilt during sentencing, and it only appeared so because of mistakes made by the court reporter. Petitioner asserts that he read verbatim a six-page letter during the proceeding, and a copy of the letter shows were the errors occurred. The letter does not appear in any of Petitioner's exhibits, however.

Federal habeas relief based on a missing transcript will only be granted where the petitioner can show prejudice. *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir.1986). Other than his own assertion that he was reading from a written letter, Petitioner provides no support for the alleged transcription errors. Petitioner's unsupported assertions are insufficient to overcome the presumption that court transcripts are correct. See *Haynes v. McCaughtry*, 1992 U.S. App. LEXIS 5502, 1992 WL 66493, at *2 (7th Cir. 1992).

Moreover, the trial court did not rely upon any alleged admissions of guilt when it denied his motion to withdraw his plea. Rather, the trial court found that Petitioner's

allegations of coercion were belied by his sworn testimony at the plea hearing that he was pleading no contest of his own free will. Accordingly, this claim is without merit.

D. Ineffective Assistance of Appellate Counsel

Petitioner's fifth claim asserts that his appellate counsel was ineffective for failing to raise many of his claims on direct appeal. He argues that this constitutes "cause" to excuse any procedural default of those claims. Because the Court bypassed Respondent's procedural default defense, this claim is moot. And as the Court found, the allegedly defaulted claims do not merit relief. Counsel was not ineffective for failing to raise meritless claims. See *Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006).

## IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because his claims are completely without merit and belied by the plea colloquy. The Court will therefore deny a certificate of appealability.

The Court will also deny permission to appeal in forma pauperis because any appeal

of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

s/ Nancy G. Edmunds
Hon. Nancy G. Edmunds
United States District Judge

Dated: September 14, 2016